IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

ANTONIO WHITLOW                                                                    PLAINTIFF

v.                                      Civil No.: 6:18-CV-6011

SERGEANT EFRID                                                                   DEFENDANT

## ORDER

Plaintiff proceeds in this matter *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983. Currently before the Court is Defendant's Motion for Summary Judgment. (ECF Nos. 27, 28, 29).

### I. BACKGROUND

Plaintiff filed his Complaint and First Amended Complaint on January 17, 2018, in the Eastern District of Arkansas. (ECF No. 2, 3). It was transferred to this District on January 18, 2018. (ECF No. 4). Plaintiff was directed to file a Second Amended Complaint and did so on February 2, 2018. ("Complaint") (ECF No. 10). After an Order from the Court (ECF No. 11), the Arkansas Department of Correction ("ADC") Ouachita River Unit submitted a completed inmate funds certification (ECF No. 13), and Plaintiff was granted IFP status on March 23, 2018. (ECF No. 14).

Plaintiff alleges his constitutional rights were violated by the use of harassment and excessive force against him while he was incarcerated in the ADC Ouachita River Unit. Specifically, Plaintiff alleges that on April 6, 2017, in the RPU section of the Unit, Defendant Efrid "tricked" Plaintiff into coming out of his cell by stating he was conducting a random cell search. (ECF No. 10 at 4). When Plaintiff came out of his cell, Plaintiff was handcuffed and placed in restraints. Once Plaintiff was restrained, Defendant Efrid informed him that he was going to attend a classification review. Plaintiff alleges Defendant Efrid knew that he "always refuse[d] to go to optional classification review, since I have that right." Plaintiff alleges he refused to attend the

1

review, and "sat on the floor. That way I couldn't be moved against my will, because I had restraints on my ankles and handcuffs behind my back." (*Id*. at 4).

Plaintiff alleges another officer suggested that Plaintiff be lifted and carried to a "transport/restraint" chair, which was a short distance away. (*Id*. at 4). Plaintiff alleges Defendant Efrid refused to do so, and instead "insisted on handling me the hard way to purposely inflict pain, instead of the easiest way possible." (*Id*. at 4). Plaintiff alleges this "hard way" consisted of Defendant Efrid carrying him under his armpits and by his right arm in order to keep him from falling. Plaintiff alleges Efrid twisted his arm to make him walk on his own "so he wouldn't have to work hard to carry me." (*Id*. at 5). Plaintiff alleges this "made his right thumb press harder against the sharp edge of the handcuffs, hurting my thumb. . . . (*Id*. at 5). Plaintiff alleges this "made my right thumb swollen, purple discolored, and numb for over a month after the incident." (*Id*. at 5).

Plaintiff further alleges Defendant Efrid refused to call the nurse to treat his thumb after the incident. Plaintiff alleges he received no response to the sick call he submitted, and believes the officers never sent it in order to hide the evidence of his injuries. (*Id*. at 6). Plaintiff alleges Nurse Hart saw him a month later and gave him Naproxen and told him if she had seen the swelling and discoloration, he would have qualified for an x-ray.

Defendants filed their Motion for Summary Judgment on August 29, 2018. (ECF Nos. 27, 28, 29). That same day, the Court entered an Order directing Plaintiff to file a Response to the Summary Judgment Motion by September 19, 2018. (ECF No. 30). To date, Plaintiff has not filed his Response and has not otherwise communicated with the Court.

In the Order directing him to Respond to the Summary Judgment Motion (ECF No. 30), Plaintiff was advised that failure to comply with the Court's Order would result in: (a) all of the

facts set forth by the Defendants in the summary judgment papers being deemed admitted by Plaintiff, pursuant to Local Rule 56.1(c); and/or (b) shall subject this case to dismissal, without prejudice, pursuant to Local Rule 5.5(c)(2).

If Plaintiff's Complaint is a verified Complaint, the Court must consider the facts set forth in Plaintiff's verified Complaint in ruling on the Summary Judgment Motion. A verified complaint is the equivalent of an affidavit for summary judgment purposes. *See e.g., Roberson v. Hayti Police Dep't*, 241 F.3d 992, 994-95 (8th Cir. 2001).

As the Court in *Roberson* pointed out, "[a]lthough a party may not generally rest on his pleadings to create a fact issue sufficient to survive summary judgment, the facts alleged in a verified complaint need not be repeated in a responsive affidavit to survive the summary judgment motion. *Id.* The Court will "piece together [Plaintiff's] version of the facts from the verified complaint. . ." *McClanahan v. Young*, No. 4:13-cv-04140, 2016 WL 520983, *1 (D.S.D. Feb. 5, 2016). Those portions of the Defendants' statement of material facts that do not conflict with [Plaintiff's verified complaint] are deemed admitted." (*Id.*).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

3

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "Conclusory, non-specific statements in an affidavit or verified complaint" are also insufficient. *McLanahan*, 2016 WL 520983, at *6 (citing *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. ANALYSIS

Plaintiff's Complaint does not meet the requirements for a verified Complaint. "A plaintiff's verified complaint is the equivalent of an affidavit for purposes of summary judgment, and a complaint signed *and dated* as true under penalty of perjury satisfies the requirements of a verified complaint, 28 U.S.C. § 1746." *Roberson*, 241 F3d at 994-95 (internal citation omitted) (emphasis added). "Unsworn declarations are permitted to be used as evidence only if "subscribed ... as true under penalty of perjury, *and dated* [.]" 28 U.S.C. § 1746. *Bonds v. Cox*, 20 F.3d 697, 702 (6th Cir. 1994).

The Court-approved Complaint form provides a section for Plaintiff to sign and date the form certifying his foregoing statements were true and correct under penalty of perjury. He signed this section of the form but left the execution date for that signature completely blank. (ECF No. 10. at 7). He then attached a separate page labelled "Exhausted Remedies," which he signed and dated. (*Id*. at 8). This signature and date did not, however, include a statement that the information

4

provided on this page was true and correct under penalty of perjury. (*Id*.). Plaintiff's Complaint is therefore not a verified Complaint.

Even if the Court assumes Plaintiff's Complaint had been properly verified, nothing in that Complaint contradicts Defendant Efrid's assertion that Plaintiff failed to exhaust his administrative remedies before filing this case.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal quotation marks and citation omitted). The "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. A prisoner's remedies are exhausted "when [the] inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits." *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012).

The Eighth Circuit Court of Appeals has recognized two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures; or, (2) when the officials themselves fail to comply with the grievance procedures. *See Gibson v. Weber,* 431 F.3d 339, 341 (8th Cir. 2005) (explaining a prisoner is only required to exhaust those administrative remedies that are "available" and any remedies that prison officials prevent a prisoner from utilizing are not considered available).

5

Defendant Efrid notes in his Statement of Facts that Plaintiff failed to file any grievances concerning the April 6, 2017, incident. (ECF No. 29 at 4). He further notes that Plaintiff was familiar with the ADC grievance process, having filed forty grievances since December 2015. (*Id*.). Finally, in his Brief, Defendant Efrid notes Plaintiff concedes he did not exhaust a grievance for this incident, but provides several contradictory excuses for not doing so, none of which are reflective of the proper ADC grievance procedure. (*Id*.; 28 at 4). Plaintiff's ADC grievance log indicates he filed no grievances in 2017 until October 2, 2017. As Plaintiff's allegations for this Complaint center on incidents occurring on April 7, 2017, his first grievance in 2017 was clearly filed long after the fifteen-day deadline to begin the ADC grievance process for the alleged incident. (ECF No. 27 at 6, 12).

Nothing in Plaintiff's Complaint conflicts with Defendants' Statements of Fact asserting he failed to exhaust his administrative remedies. On page two of his Complaint, Plaintiff checked the option indicating he had filed a grievance about the incident. (ECF No. 10 at 2). He did not, however, allege he had exhausted the grievance procedure, provide the identification number of the grievance, or provide copies of the completed grievance documents as requested by the form. In fact, later in his Complaint, he conceded that he did not exhaust his remedies. (*Id*. at 8). He alleges this was because ADC staff "stopped me from exhausting my remedies by not allowing me to contact Wendy Kelley, so I could also inform her through the mail, or by phone that Sgt.'s and staff were restricting me from having any access to the freeworld." (*Id*.). However, on the same page, Plaintiff alleges "[f]inally investigator's [sic] reported I did send Wendy Kelley a letter and grievance, concerning this incident. And she did not do anything to help me, or to provide me with any relief." (*Id*.).

Plaintiff's allegations are contradicted by the record. The ADC policy in effect at the time clearly indicates that an inmate initiates the grievance process by filing a Unit Level Grievance form with a designated unit problem-solver. (ECF No. 27 at 12-13). Mailing items to free-world individuals or directly contacting ADC Director Wendy Kelley does not satisfy the requirements of the ADC grievance procedure. Indeed, even the final appeal step of the ADC process involves the "Chief Deputy/Deputy/Assistant Director" of the ADC. (*Id*. at 18). Thus, even if Plaintiff was prevented from mailing documents to either a free world individual or Director Wendy Kelley, he was not prevented from utilizing the ADC grievance process.

Because Plaintiff's Complaint was not verified, and because nothing in that Complaint contradicted Defendant Efrid's Statements of Fact that Plaintiff failed to exhaust his administrative remedies, Defendant Efrid's facts are deemed admitted. He is therefore entitled to Summary Judgment in his favor.

## IV. CONCLUSION

For these reasons, IT IS ORDERED that Plaintiff's claims are DISMISSED WITH PREJUDICE.

IT IS SO ORDERED this 19th day of December 2018.

Judgment will be entered accordingly.

/s/P. K. Holmes, III
P. K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE